# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

February 23, 2007

Joel M. Solow
Freeman & Bass
Federal Trust Building
24 Commerce Street
Newark, NJ 07102-9838

    (*Attorney for Plaintiff*)

Christopher J. Christie
United States Attorney
Kristina Cohn
Special Assistant United States Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278

    (*Attorney for Defendant*)

    RE:    <u>Taylor v. Commissioner of Social Security</u>
            <u>Civ. No. 05-5466 (WJM)</u>

Dear Counsel:

    Plaintiff Perry Taylor ("Taylor") brings this action pursuant to 42 U.S.C. § 405(g) (2006) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") terminating his Disability Insurance Benefits ("DIB") and his eligibility for Supplemental Security Income ("SSI").  For the following reasons, the Commissioner's decision is **AFFIRMED**.

**Procedural History**

On December 16, 1997, Administrative Law Judge ("ALJ") Francis C. Newton, Jr. determined that Taylor was entitled to receive DIB retroactively to February 27, 1994. (R. at 233-34.) Upon periodic review, the Social Security Administration concluded that Taylor's medical condition had improved such that he could engage in light work as of November 4, 2002, and that he was no longer entitled to receive DIB. (R. at 241.) The reconsideration of Taylor's improvement was upheld on February 25, 2004. (R. at 285-86.) Taylor requested, and was granted, a hearing before an ALJ. (R. at 299.) ALJ Richard L. De Steno affirmed the decision to terminate benefits. (R. at 15.) The Appeals Council affirmed ALJ De Steno's decision (R. at 5-7), and Taylor's appeal of that affirmance is now before this Court.

**Background**

**A. Initial Determination of Disability**

In 1993, Taylor was treated at United Hospitals Medical Center for tuberculosis. (R. at 73-91.) During the subsequent year, he lost between forty and fifty pounds. (R. at 26.) Taylor's last position of employment ended in 1994. (R. at 13.) He worked in a chocolate factory for approximately six to seven years, and his position required him to be "on his feet all day" and "lift up to 100 pounds." (R. at 13.)

In 1995, Taylor was diagnosed with an ameloblastoma of the anterior mandible. (R. at 14.) The ameloblastoma was treated with resection and reconstructive surgery. (R. at 14.) Taylor alleges that he underwent six separate surgeries since 1995 related to the ameloblastoma, (Plaintiff's Brief ("Pl. Br.") at 4), including hospitalization in 2001 to treat an infection. (R. at 14.) Taylor also alleged a recurrence of cancer, but ALJ De Steno found that allegation to be contradicted by a subsequent biopsy and by Taylor's own testimony in February 2004. (R. at 14.) Taylor testified that the repeated surgeries have impaired his speech; however, ALJ De Steno found his speech to be "fully intelligible" at the hearing. (R. at 14.) Taylor also asserts that he "does not have teeth and cannot chew food properly." (Pl. Br. at 4.)

In March 1997, Taylor was diagnosed with depression secondary to a medical condition. (R. at 222.) Taylor testified that he was treated for depression at a mental health clinic for about one year, ending approximately in 1999 when the charity care program that provided the services discontinued Taylor's treatment. (R. at 13.) He also testified that he received mental health treatment at a college hospital but ended the treatment when he began receiving bills. (R. at 13.)

Dr. Ahmad diagnosed Taylor with spinal sprain, ankylosis and myositis on August 7, 1995. (R. at 110.) Dr. Sidney Friedman examined Taylor on August 11, 1995 and diagnosed him with chronic bronchitis with evidence of obstructive airways disease, and post recent active tuberculosis. (R. at 122-24.)

Dr. Samuel Pollock conducted a neuropsychiatric examination on August 7, 1995 and diagnosed Taylor with post-traumatic stress disorder, and cervical and lumbosacral radiculopathy. (R. at 112.)

Dr. Frank Dyer performed a psychological examination on Taylor on September 18, 1995. (R. at 128.) Dr. Dyer diagnosed Taylor with a mild visual-motor integration problem and a severe impairment in short term visual recall. (R. at 129.) Dr. Dyer found Taylor's intellectual functioning to be "within the upper segment of the borderline retarded range according to the Wechsler Adult Intelligence Scale-Revised Verbal Scale." (R. at 129.)

Taylor initially filed for DIB and SSI on March 23, 1995, claiming disability since February 27, 1994. (R. at 227.) Applying the familiar five-step analysis for determining whether a claimant is disabled, ALJ Newton first found that Taylor was not engaged in substantial gainful activity since his alleged date of disability. (R. at 228.) At step two, it was determined that Taylor had severe impairments due to an affective disorder, post-traumatic stress disorder, ameloblastoma of the anterior mandible, lumbosacral strain, lumbosacral and cervical radiculopathy, chronic bronchitis and obstructive airway disease. (R. at 228.) At step three, ALJ Newton found that Taylor's disability did not meet the criteria of an enumerated impairment. (R. at 228.) At step four, it was determined that Taylor could not return to his previous employment. (R. at 230-31.) Finally, at step five, the ALJ found that Taylor was "incapable of making a successful adjustment to work which exists in significant numbers in the national economy." (R. at 231.) As a result, on December 16, 1997, Taylor was determined to be disabled, with full benefits retroactive to February 27, 1994. (R. at 233-34.)

**B. Subsequent Treatment and Evaluations**

Taylor continued to seek medical treatment and consultation after February 27, 1994, the effective date of his disability. Dr. John Augustine, a Social Security Consultative Physician, examined Taylor on October 2, 2002. (R. at 359.) Dr. Augustine noted Plaintiff's past diagnosis of tuberculosis and previous treatment for the ameloblastoma. (R. at 359.) The doctor also noted that Taylor complained of "[r]eal bad arthritis" in his lower back. (R. at 359.) Taylor indicated that he took over-the-counter medication for the pain. (R. at 359.) Upon examination, Taylor was under no acute distress, and his speech and hearing were normal. (R. at 360.) Taylor's lung fields were clear to auscultation. (R. at 360.) Taylor showed no evidence of joint swelling, deformity, redness or inflammation and his gait was normal. (R. at 360.) Dr. Augustine reported that Taylor showed no discomfort in getting on or off of the examining table and that he could walk on his heels and toes. (R. at 360.) Dr. Augustine noted that Taylor suffered no sensory or motor deficits in his lower extremities, his straight leg raising test was normal, and that he had a full range of motion with only some limitation in the spine. (R. at 360.) Moreover, Taylor's deep tendon reflexes were normal, as were his chest x-ray, electrocardiogram, and pulmonary function test. (R. at 360.)

Dr. Luis Zeiguer, a Social Security Consultative Psychiatrist, examined Taylor on

October 19, 2002.  (R. at 366.)  Dr. Zeiguer's report was "unremarkable," but he indicated that "[u]nder stress, [Taylor] could experience a relapse of major depression."  (R. at 367-68.)  Dr. Zeiguer reported that Taylor denied any history of suicide attempts, psychiatric hospitalizations, or psychosis.  (R. at 367.)  At the evaluation, Taylor complained of shoulder pain, bilateral leg pain with numbness and tingling, and a history of asthma.  (R. at 367.)

Dr. Buske, a State Agency physician, examined Taylor in November 2002.  (R. at 242-49.)  Dr. Buske found that Taylor could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and had unlimited pushing and/or pulling ability.  (R. at 243.)  The physician also found that Taylor could occasionally crawl, crouch, kneel, stoop, climb, and could frequently balance.  (R. at 244.)  Dr. Buske also reported the absence of manipulative, visual, communicative, or environmental limitations.  (R. at 245-46.)  Dr. Burton Gillette, a State Agency physician, reaffirmed Dr. Buske's findings in a February 2003 examination.  (R. at 277-84).

Dr. Phillip Delli Santi examined Taylor on November 26, 2002.  (R. at 369-72.)  An x-ray of the lumbar spine showed slight scoliosis.  (R. at 371, 404.)  On December 17, 2002, Dr. Delli Santi reported Taylor had a "painful and restricted cervical and lumbar range of motion with associated parathesia [sic] into upper and lower extremity [sic]."  (R. at 399.)  A November 2003 examination showed evidence of degenerative disc disease and C6-7 foraminal stenosis.  (R. at 395.)  In December 2003, an x-ray of Taylor's lumbar spine was normal.  (R. at 394.)

Dr. Charles Edwards examined Taylor on January 24, 2004, and diagnosed him with degenerative disc disease of the cervical spine and severe spinal stenosis of C6-7 on the left side.  (R. at 406.)  Taylor complained of arm weakness and pain in the left upper extremity and lower back for the previous two years.  (R. at 405.)  Dr. Edwards reported Taylor took over-the-counter medication for his pain, and that his gait was normal and unassisted.  (R. at 405.)  Taylor was able to fully extend his hands, make a fist, separate papers, and manipulate buttons.  (R. at 408.)  Dr. Edwards reported that on a scale of one to five, with five being normal, Taylor's grip strength was four out of five in his left hand and five out of five in his right hand.  (R. at 406.)  Additionally, his pinch strength was three out of five in his left hand and four out of five in his right hand.  (R. at 406.)

Taylor was examined on April 27, 2005 at the University of Medicine & Dentistry of New Jersey University Hospital.  (R. at 423.)  He was diagnosed with C3 spondylolisthesis and multi-level degenerative changes.  (R. at 423.)

### C. ALJ De Steno's Finding of Medical Improvement

At the hearing before ALJ De Steno on June 29, 2005, Taylor testified that he spends his time sitting on the porch, watching television, cooking, cleaning and shopping.  (R. at 13.)  He testified that he can sit for thirty minutes before he suffers from a pain in the shoulder and neck

4

and his arms become numb.  (R. at 13.)  These symptoms also occur if he stands for twenty minutes, or walks about three blocks.  (R. at 13.)  He also reported that he could lift fifteen to twenty pounds.  (R. at 13.)

In his September 23, 2005 opinion, ALJ De Steno engaged in a detailed analysis which clearly addressed each of the considerations required in the seven-step inquiry for termination of benefits cases, codified at 20 C.F.R. § 416.994(b)(5).  At the first step, § 416.994(b)(5)(i), ALJ De Steno determined that Taylor's impairments did not "meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4."  (R. at 13.)  At the next step, the ALJ must determine whether the claimant experienced "medical improvement as shown by a decrease in medical severity" of the alleged impairments, and show that the improvement is related to an ability to do work.  § 416.994(b)(5)(iii).  Here, ALJ De Steno found that Taylor had improved medically, and that the medical improvement was "directly related to ability to perform work."  (R. at 15.)  Next, it must be determined whether any existing impairments are severe.  § 416.994(b)(5)(v).  Here, the ALJ held that Taylor "has a continuing impairment which is 'severe.'"  (R. at 15.)  If the claimant has a severe impairment, the regulations require an assessment of residual functional capacity ("RFC") to determine whether claimant can return to his previous employment, and if not, what type of work claimant can engage in considering his RFC, age, education, and past work experience.  § 416.994(b)(5)(vi-vii).  Here, the ALJ held that Taylor could not return to his previous employment (R. at 16.), but could perform "the full range of light work."  (R. at 15.)

## Standard of Review

In reviewing the ALJ's decision, the Court exercises plenary review over questions of law.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  In contrast, the Court must determine whether the ALJ's findings of fact are supported by substantial evidence in the record.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Pearson v. Barnhart*, 380 F. Supp. 2d 496, 503 (D.N.J. 2005).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance").  Thus, this Court's inquiry is limited to whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner.  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

The relevant statutory provision does not expressly state which party bears the initial burden of proof in establishing continuing disability in termination of benefits cases.  *See, e.g.*, 42 U.S.C. § 423(f) (2006) (stating that the Commissioner shall not make an "initial inference as to the presence or absence of disability . . . drawn from the fact that the individual has previously

been determined to be disabled"). In termination of benefits cases, the Third Circuit has placed the initial burden to prove continuing disability on the claimant. *Chrupcala v. Heckler*, 829 F.2d 1269, 1274 (3d Cir. 1987); *Keegan v. Heckler*, 744 F.2d 972, 974-75 (3d Cir. 1984); *Kuzmin v. Schweiker*, 714 F.2d 1233, 1236-38 (3d Cir. 1983). A prior finding of eligibility does not give rise to a prima facie case of continuing disability. *Kuzmin*, 714 F.2d at 1237. A claimant may, however, satisfy his or her burden by relying on medical evidence relied upon to reach a previous determination of disability, "supplemented by claimant's own testimony of the continuing nature of the disability." *Id*. The burden of proof then shifts to the Commissioner to demonstrate "that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity." *Chrupcala*, 829 F.2d at 1274; *Newhouse v. Heckler*, 753 F.2d 282, 285 (3d Cir. 1985) (quoting *Kuzmin*, 714 F.2d at 1237); *Duggan v. Shalala*, No. 93-2098, 1994 U.S. Dist. LEXIS 78, at *11 (D.N.J. Jan. 4, 1994).

## Discussion

Taylor raises three main arguments on appeal. First, he argues that ALJ De Steno's decision affirming the termination of DIB payments was not supported by substantial evidence. Second, Taylor contends that the ALJ erred in finding his subjective reports of pain not credible. Finally, Taylor argues the ALJ committed reversible error in finding objective medical evidence from 2005 to be immaterial.

### A. Substantial Evidence

Taylor argues on appeal that ALJ De Steno did not base his decision to terminate benefits on substantial evidence. (Pl. Br. at 13.) Taylor asserts that the ALJ erred in failing to expressly discuss each of Dr. Zeiguer's findings, and that the effects of surgery to remove the ameloblastoma of the anterior mandible served as evidence of continuing disability. (Pl. Br. at 13.) Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'" *Pierce*, 487 U.S. at 565 (quoting *Consol. Edison*, 305 U.S. at 229)); *see also Woody*, 859 F.2d at 1159 (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance"). While the ALJ is obligated to develop a record that supports his conclusions, he need not expressly address every element of Taylor's treatment history. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004). The ALJ is not required to use "magic words" in his analysis or adhere to a particular format; rather, the law simply requires "that the record be developed sufficiently to permit meaningful appellate review." *Sassone v. Commissioner*, 165 Fed. Appx. 954, 959 (3d Cir. 2006) (citing *Jones*, 364 F.3d at 505)).

Here, ALJ De Steno's findings were supported by substantial evidence. In rejecting Taylor's argument that his depression served as a basis for continuing disability, ALJ De Steno cited the fact that Taylor was not presently receiving any psychiatric treatment, nor had he been doing so for three years prior to the hearing. (R. at 14.) In addition, the ALJ noted that an

October 2002 psychiatric examination was "unremarkable and [Taylor]'s activities of daily living were not compromised by a mental impairment." (R. 14.) The ALJ's findings shall not be disturbed simply because he did not use the "magic words" used in Dr. Zeiguer's evaluation. *Sassone*, 165 Fed. Appx. at 959. It is clear the ALJ considered the findings of Dr. Zeiguer and addressed them in his decision. Thus, his conclusion that Taylor did not suffer from severe mental impairment was supported by substantial evidence in the record.

In addition, Taylor argues that his ability to eat is compromised by the effects of the surgeries related to the removal of the ameloblastoma. (R. at 14.) Ameloblastoma of the anterior mandible served as one of the bases for ALJ Newton's finding that Taylor was disabled as of February 1994. (R. at 11.) In termination of benefits cases, the burden is on the plaintiff to establish continuing disability. *Chrupcala*, 829 F.2d at 1274; *Keegan*, 744 F.2d at 974-75; *Kuzmin*, 714 F.2d at 1236-38. Continuing disability can be established by presenting medical evidence used at the initial determination of disability supplemented by Taylor's testimony regarding the continued effects of the impairment. *Kuzmin*, 714 F.2d at 1237.

Here, ALJ De Steno does not specifically address Taylor's ability to eat. Taylor, however, failed to shift the burden to the Commissioner because he did not assert that this particular impairment was relevant to his initial determination of disability in 1994. Moreover, even if this Court were to determine that Taylor made a sufficient showing to shift the burden on this issue, the Court would see no reason to disturb ALJ De Steno's conclusion that Taylor can engage in light work. This conclusion is well supported by the record evidence, including the facts that Taylor's credibility is sufficiently called into question, that the alleged impairment is not supported by objective medical evidence, and that Taylor does not argue that his daily activities are affected by the alleged impairment. The Court finds that the ALJ did not err in failing to expressly address Taylor's ability to eat. Therefore, the Court rejects Taylor's argument on this issue.

Next, Taylor asserts that his speech was impaired by his previous surgeries. (R. at 14.) ALJ De Steno specifically addressed this claim in his opinion, and found that Taylor spoke in a "fully intelligible voice at the hearing." (R. at 14.) Consequently, there was substantial evidence in the record to support the ALJ's finding that Taylor's alleged speech impairment did not serve as grounds to reverse the previous finding of medical improvement.

Lastly, Taylor argues that ALJ De Steno failed to consider Dr. Delli Santi's 2003 finding of C6-7 foraminal stenosis. This allegation is without support. ALJ De Steno expressly addresses Dr. Delli Santi's findings, but concludes, based on objective medical evidence, that Taylor's ability to engage in light work is not affected by the C6-7 foraminal stenosis. (R. at 14-15.)

In sum, given ALJ De Steno's thorough discussion, the Court finds that the ALJ's conclusions regarding Taylor's medical improvement are supported by substantial evidence in the record.

### B. Taylor's Credibility

Taylor argues that ALJ De Steno erred in failing to specifically cite the evidence supporting his conclusion that Taylor's subjective reports of disabling pain and related symptoms were "not credible or supported by the weight of medical evidence." (R. at 17.) It is well-established that an ALJ is required to determine the extent to which a plaintiff is disabled by his or her subjective complaints of pain. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). Under the current statutory regime, a claimant's statements about his or her pain do not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c). Rather, a disability must be proven through objective medical evidence. Furthermore, the ALJ should consider a claimant's daily activities, the location, frequency, and intensity of the pain and symptoms, the type and dosage of pain medication, and any other measures used to relieve the alleged pain. 20 C.F.R. § 404.1529(c)(3). In making such determinations, the ALJ is given great discretion, and his findings are entitled to judicial deference. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

Here, ALJ De Steno cites inconsistencies in Taylor's case throughout the opinion. Despite complaints of depression, it was noted that Taylor was not receiving psychiatric treatment, nor was he doing so for three years prior to the ALJ's review of the case. (R. at 14.) Additionally, Taylor's daily activities were found to be "inconsistent with a person with a 'severe' mental impairment." (R. at 14.) Next, it was noted that Taylor's own testimony regarding the ameloblastoma of the anterior mandible was inconsistent. Taylor reported a recurrence of cancer, yet this was contradicted by a biopsy in 2001, and by his own testimony in a 2004 disability hearing. (R. at 14.) The ALJ also noted that Taylor's allegedly disabling neck, shoulder, and back pain were at variance with the results of the medical examinations in October 2002 and January 2004, his daily activities, infrequent prior reports of neck pain, and use of over-the-counter medication to alleviate the alleged pain. (R. at 14.) Thus, the ALJ's finding that Taylor's reports of pain were "not credible or supported by the weight of medical evidence" was in fact supported by substantial evidence in the record and was articulated with appropriate specificity. (R. at 17.)

### C. New Evidence

In April 2005, a radiology report revealed that Taylor suffered from C3 spondylolisthesis and multi-level degenerative changes. (R. at 423.) The medical report makes no reference as to the onset date of either condition. (R. at 423.) Taylor was never previously diagnosed with spondylolisthesis, and he argues that ALJ De Steno erroneously refused to consider the diagnosis as relevant to his pre-2002 disability. (Pl. Br. at 15.) A non-contemporaneous, or retrospective, diagnosis of an impairment can support a finding of past impairment, *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003), but that diagnosis must establish evidence which is new and noncumulative. *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). Remand based on new evidence is not warranted if the proffered evidence simply reiterates evidence previously

considered by the ALJ.  *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 139-40 (1st Cir. 1987).  Rather, under 42 U.S.C. § 405(g), such a remand is warranted "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Hardee v. Barnhart*, 188 Fed. Appx. 127, 130 (3d Cir. 2006).  To be considered material, the new evidence "must 'relate to the time period for which the benefits were denied, and . . . not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" *Id*.  (quoting *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)).

In the instant action, ALJ De Steno dismissed the proffered evidence on the grounds that "medical evidence submitted relating to 2005 is of little relevance in determining whether [Taylor] ceased to be disabled in November 2002." (R. at 15.)  While it is true that the diagnosis of spondylolisthesis is "new" in the sense that it did not appear in any previous medical examination, it is not "new evidence" that warrants remand.  Neither the proffered medical evaluation nor Taylor's argument at the hearing before the ALJ alleges that the spondylolisthesis diagnosis "relate[s] to the time period for which the benefits were denied." *Hardee*, 188 Fed. Appx. at 130.  In his argument before ALJ De Steno, Taylor asserted only that spondylolisthesis is "entirely consistent with [his] complaints of pain and numbness." (R. at 32.)  Absent support for the notion that Taylor suffered from spondylolisthesis prior to November 2002, however, the diagnosis in 2005 amounts to nothing more than evidence of "a later-acquired disability," which does not warrant remand. *Hardee*, 188 Fed. Appx. at 130 (quoting *Szubak*, 745 F.2d at 833).  In this context, the ALJ's statement that "medical evidence relating to 2005 is of little relevance in determining whether [Taylor] ceased to be disabled in November 2002" is a correct statement of the law.  (R. at 15.)

Therefore, the Court cannot conclude that ALJ De Steno erred in finding the 2005 medical report to be irrelevant in determining Taylor's disability as of 2002.

<u>Conclusion</u>

For the foregoing reasons, ALJ De Steno's decision is **AFFIRMED**.  An appropriate Order accompanies this Letter Opinion.

  /s William J. Martini      
**William J. Martini, U.S.D.J.**